WILLIAM BLUMENTHAL
General Counsel
JANET M. EVANS
MARY L. JOHNSON
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Mail Drop NJ-3212
Washington, D.C. 20580
ATTORNEYS FOR PLAINTIFF
(ph) 202-326-2125 (Evans)
(ph) 202-326-3115 (Johnson)
(fax) 202-326-3259

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, Plaintiff, <br><br> v. <br><br> SUNNY HEALTH NUTRITION TECHNOLOGY & PRODUCTS, INC. and SUNNY SIA; Defendants. | Case No. *8:06-cv-2193-T-24EAJ* <br><br> STIPULATED FINAL ORDER FOR PERMANENT INJUNCTION AND SETTLEMENT OF CLAIMS FOR MONETARY RELIEF AGAINST SUNNY HEALTH NUTRITION TECHNOLOGY & PRODUCTS, INC. AND SUNNY SIA |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission") filed a Complaint

for Permanent Injunction and Other Equitable Relief ("Complaint") against defendants Sunny

Health Nutrition Technology & Products, Inc., which also has done business as SHN Tech,

Inc., and Sunny Sia, (together, "defendants") pursuant to Section 13(b) of the Federal Trade

Page 1 of 25

Commission Act ("FTC Act"), 15 U.S.C. § 53(b), alleging violations of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

Defendants agree to the entry of the following Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief ("Order") to resolve the allegations set forth in the Complaint. The Court, being advised in the premises, finds:

### FINDINGS

1.   This Court has jurisdiction over the subject matter of this case and jurisdiction over all parties. Venue in the Middle District of Florida is proper.

2.   The Complaint states a claim upon which relief can be granted, and the Commission has the authority to seek the relief it has requested.

3.   The acts and practices of defendants were and are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.   Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendants also waive any claim that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

5.   This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law.

6.   Each party shall bear its own costs and attorneys' fees.

7.   Entry of this Order is in the public interest.

8.    Defendants, without admitting or denying the allegations of the Commission's Complaint, stipulate and agree to entry of this Order under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

9.    Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon defendants, and their officers, agents, servants, representatives, employees, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise.

10.   Nothing in this Order obviates the defendants' obligations to comply with Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52.

11.   This Order resolves only claims against the named defendants and does not preclude the Commission from initiating further action or seeking any remedy against any other persons or entities, including without limitation persons or entities who may be subject to portions of this Order by virtue of actions taken in concert or participation with defendants, and persons or entities in any type of indemnification or contractual relationship with defendants.

12.   This Order was drafted jointly by the Commission and defendants and reflects the negotiated settlement of the parties.

13.   The paragraphs of this Order shall be read as the necessary requirements for compliance and not as alternatives for compliance and no paragraph serves to modify another paragraph unless expressly so stated.

## ORDER

### DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.   "Defendants" means:

    A.   Sunny Health Nutrition Technology & Products, Inc. ("SHN"), which also has

        done business as SHN Tech, Inc., a corporation, its divisions and subsidiaries,

        its successors and assigns; and

    B.   Sunny Sia ("Sia"), individually and in his capacity as a director or officer of

        SHN.

2.   "Competent and reliable scientific evidence" shall mean tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

3.   "Covered product" shall mean any dietary supplement, food, or drug.

4.   "Commerce" shall have the meaning set forth in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

5.   "Endorsement" shall have the meaning set forth in 16 C.F.R. § 255.0(b).

6.   "Metatags" shall mean any word or words embedded in the source code of an Internet website that may be used by an Internet search engine in indexing websites for the purpose of selecting sites in response to an Internet user's search request.

7.   "Food" and "drug" shall have the meaning set forth in Section 15 of the FTC Act, 15 U.S.C. § 55.

8.   "Including" shall mean "including, without limitation."

9.   "HeightMax" shall mean HeightMax™ Plus and HeightMax™ Concentrate dietary supplements and any other product containing one or more of the ingredients in HeightMax™ Plus and HeightMax™ Concentrate as currently sold that is promoted to provide any height-related benefit.

10.   "Liposan Ultra Chitosan Fat Blocker" shall mean "Liposan Fat Blocker," "Chitosan-based Sunny Health Nutrition Fat Blocker," "SHN's Fat Blocker," and any other product containing one or more of the ingredients in "Liposan Fat Blocker," "Chitosan-based Sunny Health Nutrition Fat Blocker," or "SHN's Fat Blocker" as currently sold that is promoted to bind with fat lipids before they can be absorbed into the bloodstream or cause weight loss.

11.   "Osteo-Vite" shall mean "Osteo-Vite" and any other product containing one or more of the ingredients in "Osteo-Vite" as currently sold that is promoted to provide a benefit to the bones or bone health.

12.   The terms "and" and "or" in this Order shall be construed conjunctively or disjunctively as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

13.   "Target product" shall mean HeightMax™ Plus, HeightMax™ Concentrate, Liposan Ultra Chitosan Fat Blocker, and Osteo-Vite.

14. "Preferential search engine display" shall mean any program in which an individual Internet site or URL: 1) appears as a sponsored link or sponsored site in search engine results; 2) can pay for a higher ranking in a search results list, with the result that relevancy measures alone do not dictate its rank; or 3) can pay to be included in a search engine's index, or pool, of sites available for display as search results, when that Internet site or URL might not otherwise have been included, or might not have been included at a particular point in time.

## CONDUCT PROHIBITIONS

### I.

### PROHIBITED REPRESENTATIONS FOR HEIGHTMAX PRODUCTS

IT IS HEREBY ORDERED that defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of HeightMax or any other covered product, in or affecting commerce, are hereby permanently restrained and enjoined from making any representation, in any manner, expressly or by implication, including through the use of the name "HeightMax" or any other product name or endorsement, through the use of metatags, or through preferential search engine display, that any such product:

A.   Increases height in users over what they would achieve without the product;

B.   Causes users to grow an additional 2 to 3 inches, or any other amount, in 6 months or any other period of time;

C.   Has been the subject of clinical tests proving that the product:

  1.   Increases the height of teenagers and young adults; and

  2.   As compared to persons who do not use the product, when used for 6 months, causes a 10% to 25% gain in height and when used for more than a year causes a 20% to 35% gain in height or causes any other percentage gain in height in any period of time; and/or

D.   Increases lean body mass and reduces body fat,

unless the representation is true, nonmisleading, and, at the time it is made, defendants possess and rely on competent and reliable scientific evidence that substantiates the representation.

## II.

### PROHIBITED REPRESENTATIONS FOR LIPOSAN ULTRA CHITOSAN FAT BLOCKER

IT IS FURTHER ORDERED that defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Liposan Ultra Chitosan Fat Blocker or any other covered product, in or affecting commerce, are hereby permanently restrained and enjoined from

Page 7 of 25

making any representation, in any manner, expressly or by implication, including through the

use of a product name or endorsement, through the use of metatags, or through preferential

search engine display, that such product:

    A.    Enables users to lose weight;

    B.    Causes weight loss by binding with fat lipids before they can be absorbed into the bloodstream; and/or

    C.    Is supported by studies proving that individuals taking the product will lose an average of 8%, or any other amount, of their body weight in a 4-week period or any other time period,

unless the representation is true, nonmisleading, and, at the time it is made, defendants

possess and rely on competent and reliable scientific evidence that substantiates the

representation.

## III.

### PROHIBITED REPRESENTATIONS FOR OSTEO-VITE

IT IS FURTHER ORDERED that defendants, directly or through any corporation,

partnership, subsidiary, division, trade name, or other device, and their officers, agents,

servants, representatives, employees, and all persons or entities in active concert or

participation with them who receive actual notice of this Order, by personal service or

otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering

for sale, sale, or distribution of Osteo-Vite or any other covered product, in or affecting

commerce, are hereby permanently restrained and enjoined from making any representation,

in any manner, expressly or by implication, including through the use of a product name or

endorsement, through the use of metatags, or through preferential search engine display, that

such product:

    A.    Increases bone mineral density by up to 9%, or any other amount, in 18
months, or any other period of time; and/or

    B.    Is safe or has no adverse side effects or toxicity,

unless the representation is true, nonmisleading, and, at the time it is made, defendants

possess and rely on competent and reliable scientific evidence that substantiates the

representation.

## IV.

## PROHIBITED REPRESENTATIONS FOR
## COVERED PRODUCTS

IT IS FURTHER ORDERED that defendants, directly or through any corporation,

partnership, subsidiary, division, trade name, or other device, and their officers, agents,

servants, representatives, employees, and all persons or entities in active concert or

participation with them who receive actual notice of this Order, by personal service or

otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering

for sale, sale, or distribution of any covered product, in or affecting commerce, are hereby

permanently restrained and enjoined from making any representation, in any manner,

expressly or by implication, including through the use of a product name or endorsement,

through the use of metatags, or through preferential search engine display, about the benefits,

performance, safety, side effects, or efficacy of any covered product unless the representation

is true, nonmisleading, and, at the time the representation is made, defendants possess and rely upon competent and reliable scientific evidence that substantiates the representation.

## V.

## PROHIBITED REPRESENTATIONS ABOUT
## PERSONS PROVIDING ENDORSEMENTS

IT IS FURTHER ORDERED that defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees, and all other persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any covered product in or affecting commerce, are hereby permanently restrained and enjoined from making any representation, in any manner, expressly or by implication, including through the use of metatags, or through preferential search engine display, about an endorser's existence, experience, expertise, training, education, or qualifications, unless such representation is true and nonmisleading and the endorsement reflects the opinions, findings, beliefs, or experience of the endorser.

## VI.

## PROHIBITED REPRESENTATIONS ABOUT TESTS OR STUDIES

IT IS FURTHER ORDERED that defendants, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents,

servants, representatives, employees, and all persons or entities in active concert or

participation with them who receive actual notice of this Order, by personal service or

otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering

for sale, sale, or distribution of any covered product, in or affecting commerce, are hereby

permanently restrained and enjoined from misrepresenting, in any manner, expressly or by

implication, including through the use of metatags, or through preferential search engine

display, the existence, contents, validity, results, conclusions, or interpretations of any test,

study, or research.

## VII.

## FDA APPROVED CLAIMS

IT IS FURTHER ORDERED that:

A.   Nothing in this Order shall prohibit the defendants from making any

representation for any drug that is permitted in labeling for such drug under

any tentative final or final standard promulgated by the Food and Drug

Administration, or under any new drug application approved by the Food and

Drug Administration; and

B.   Nothing in this Order shall prohibit the defendants from making any

representation for any product that is specifically permitted in labeling for

such product by regulations promulgated by the Food and Drug

Administration pursuant to the Nutrition Labeling and Education Act of 1990.

## VIII.

### COOPERATION WITH FTC COUNSEL

IT IS FURTHER ORDERED that defendants SHN and Sia shall, in connection with

this action or any subsequent investigation related to or associated with the transactions or the

occurrences that are the subject of the FTC's Complaint, cooperate in good faith with the

FTC and appear or cause its officers, employees, representatives, or agents to appear at such

places and times as the FTC shall reasonably request, after written notice, for interviews,

conferences, pretrial discovery, review of documents, and for such other matters as may be

reasonably requested by the FTC. If requested in writing by the FTC, defendants SHN and

Sia shall appear or cause its officers, employees, representatives, or agents to appear and

provide truthful testimony in any trial, deposition, or other proceeding related to or associated

with the transactions or the occurrences that are the subject of the Complaint, without the

service of a subpoena.

### IX.

### MONETARY JUDGMENT AND CONSUMER REDRESS

IT IS FURTHER STIPULATED AND ORDERED that:

A.      Subject to the conditions set forth in Subparagraphs B, C, D, and E of this

         Part, judgment in the amount of Three Hundred Seventy-Five Thousand

         Dollars ($375,000) is hereby entered against defendants, jointly and severally,

         which shall be paid within ten (10) business days after entry of this Stipulated

         Final Order, by electronic funds transfer into an account to be designated by

the Commission in accord with directions provided by the Commission.

Defendants relinquish all dominion, control, and title to the monies transferred

to the FTC, and agree that all legal and equitable title to said monies is vested

in the Commission, for use according to the terms of this Order. Defendants

shall make no claim to or demand for the return of the funds, directly or

indirectly, through counsel or otherwise.

B.     In the event of any default on any obligation to make payment under this

Order, interest, computed pursuant to 28 U.S.C. § 1961(a), shall accrue from

the date of default to the date of payment. In the event such default continues

for ten (10) calendar days beyond the date a payment is due, the entire unpaid

amount shall immediately become due and payable. Defendants shall be

jointly and severally liable for all payments required by this Order and any

interest on such payments.

C.     All funds paid pursuant to this Order shall be deposited into a fund

administered by the Commission or its agent to be used for equitable relief,

including but not limited to consumer redress, and any attendant expenses for

the administration of such equitable relief. In the event that direct redress to

consumers is wholly or partially impracticable or funds remain after redress is

completed, the Commission may apply any remaining funds for such other

equitable relief (including consumer information remedies) as it determines to

be reasonably related to the defendants' practices alleged in the Complaint.

Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendants shall have no right to challenge the Commission's choice of remedies under this Part. Defendants shall have no right to contest the manner of distribution chosen by the Commission.

D.   The Commission's agreement to this Order, requiring that the defendants pay less than the full amount of consumer injury, is expressly premised upon the truthfulness, accuracy, and completeness of their sworn financial statements and supporting documents submitted to the Commission, namely:

1.   The documentation submitted January 4, 2006, as amended on April 14, 2006, including the federal income tax returns for SHN from 2002-2004, the federal income tax return for Sunny Sia from 2002, and the federal income tax returns for Sunny Sia and Nataliya Sia from 2003-2004;

2.   The documentation submitted January 23, 2006, including sales of the target products and advertising costs incurred in making such sales;

3.   The documentation submitted April 14, 2006, as amended May 16, 2006, including the individual financial statement of Sunny Sia, the individual financial statement of Nataliya Sia, the corporate financial statement of SHN, the federal income tax returns for SHN from 2002-2004, the federal income tax return for Sunny Sia from 2002, and the

federal income tax returns for Sunny Sia and Nataliya Sia from 2003-2004;

4.    The written information submitted May 15, 2006, including sales data

for the target products and describing certain assets of Sunny Sia and

SHN;

5.    The documentation submitted May 16, 2006, including the corporate

financial statement of SHN, the individual financial statement of

Sunny Sia, the individual financial statement of Nataliya Sia, the

personal balance sheets for Sunny Sia dated December 31, 2005; the

balance sheets for SHN dated December 31, 2005; and the corporate

income statement for SHN reflecting six months ending December 31,

2005; and

6.    The written information submitted May 26, 2006 and June 16, 2006,

describing certain personal assets of Sunny Sia.

Such financial statements and supporting documents contain material information

upon which the Commission relied in negotiating and agreeing to this Order.

E.    If, upon motion by the Commission, this Court finds that the defendants have

failed to disclose any material asset of defendants, or materially misstated the

value of any of the defendants' assets in the financial statements and related

documents described above, or have made any other material misstatement or

omission in the financial statements and related documents described above,

the Court shall enter judgment against the defendants, jointly and severally, in

the amount of One Million Nine Hundred Thousand Dollars ($1,900,000) in
U.S. currency, representing the estimated loss to consumers, minus any
payments previously made under Subparagraph A of this Part IX, which
amount shall be immediately due and payable, and interest computed at the
rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin
to accrue on the unpaid balance.  For the purpose of this Part IX, defendants
waive any right to contest any of the allegations in the Complaint filed in this
action.

F.     In accordance with 31 U.S.C. § 7701, the defendants are hereby required,
unless they have done so already, to furnish the Commission their respective
taxpayer identifying numbers (social security numbers or employer
identification numbers) which shall be used for the purposes of collecting and
reporting on any delinquent amount arising out of the defendants' relationship
with the government.

G.     Defendants agree that the facts as alleged in the Complaint filed in this action
shall be taken as true for the purpose of a nondischargeability complaint in any
bankruptcy proceeding.

H.     Proceedings under this Part are in addition to, and not in lieu of, any civil or
criminal remedies that may be provided by law, including any other
proceedings the Commission may initiate to enforce this Order.

## X.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

IT IS FURTHER ORDERED that each defendant, within five (5) business days of receipt of this Order as entered by the Court, shall submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XI.

## COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring and investigating compliance with any provision of this Order,

A.      Within ten (10) days of receipt of written notice from a representative of the Commission, SHN and Sia each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such defendant's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.    obtaining discovery from every person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2.    posing as consumers and suppliers to: SHN or Sunny Sia, SHN's or Sia's employees, or any other entity managed or controlled in whole or in part by SHN or Sia, without the necessity of identification or prior notice; and

C.    SHN and Sia shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present.

*Provided, however,* that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## XII.

## COMPLIANCE REPORTING BY DEFENDANT(S)

IT IS FURTHER ORDERED that, in order that compliance with the provisions of this Order may be monitored:

A.   For a period of five (5) years from the date of entry of this Order,

    1.   Sunny Sia shall notify the Commission of the following:

        a.   Any changes in residence, mailing addresses, and telephone numbers of Sia, within ten (10) days of the date of such change;

        b.   Any changes in employment status (including self-employment) of Sia and any change in the ownership of Sia in any business entity, within ten (10) days of the date of such change. Such notice shall include the name and address of each business that Sia is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of Sia's duties and responsibilities in connection with the business or employment; and

        c.   Any changes in Sia's name or use of any aliases or fictitious names; and

    2.   SHN and Sunny Sia shall notify the Commission of any changes in corporate structure of SHN or any business entity that Sia directly or indirectly control(s), or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor entity; the creation or

dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the corporation about which SHN or Sia learns less than thirty (30) days prior to the date such action is to take place, SHN or Sia shall notify the Commission as soon as is practicable after obtaining such knowledge.

B. Sixty (60) days after the date of entry of this Order, SHN and Sunny Sia shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

 1. For Sunny Sia:

  a. The then-current residence address, mailing addresses, and telephone numbers of Sia;

  b. The then-current employment and business addresses and telephone numbers of Sia, a description of the business activities of each such employer or business, and the title and responsibilities of Sia, for each such employer or business; and

  c. Any other changes required to be reported under Subparagraph A of this Part.

2.    For all defendants:

    a.    A copy of each acknowledgment of receipt of this Order,

        obtained pursuant to Part XIV(D); and

    b.    Any other changes required to be reported under Subparagraph

        A of this Part.

C.    For the purposes of this Order, defendants shall, unless otherwise directed by

the Commission's authorized representatives, mail all written notifications to

the Commission to:

> Associate Director for Enforcement
> Bureau of Consumer Protection
> Federal Trade Commission
> 600 Pennsylvania Ave., NW, Washington, D.C. 20580
> Re: FTC v. Sunny Health Nutrition Technology & Products, Inc. and
> Sunny Sia, Civil Action No. 8:06 -CV - 2193 - T - 24 EAJ

D.    For purposes of the compliance reporting and monitoring required by this

Order, the Commission is authorized to communicate directly with

defendants.

## XIII.

## RECORD KEEPING PROVISIONS

IT IS FURTHER ORDERED that, for a period of eight (8) years from the date of

entry of this Order, SHN and Sunny Sia, in connection with the manufacturing, advertising,

labeling, marketing, promotion, offering for sale, sale, or distribution of a covered product,

and their agents, employees, officers, corporations, successors, and assigns, and those persons

Page 21 of 25

in active concert or participation with them who receive actual notice of this Order by

personal service or otherwise, are hereby restrained and enjoined from failing to create and

retain the following records:

    A.    Accounting records that reflect the cost of goods sold, revenues generated, and

           the disbursement of such revenues;

    B.    Personnel records accurately reflecting:  the name, address, and telephone

           number of each person employed in any capacity by such business, including

           as an independent contractor; that person's job title or position; the date upon

           which the person commenced work; and the date and reason for the person's

           termination, if applicable;

    C.    Customer files containing the names, addresses, phone numbers, dollar

           amounts  paid, quantity of items purchased, and description of items

           purchased, to the extent such information is obtained in the ordinary course of

           business;

    D.    Complaints and refund requests (whether received directly, indirectly or

           through any third party) and any responses to those complaints or requests;

           and

    E.    Copies of all sales scripts, training materials, advertisements, or other

           marketing materials.

    F.    All records and documents necessary to demonstrate full compliance with

           each provision of this Order, including but not limited to, copies of

acknowledgments of receipt of this Order, required by Part X, and reports submitted to the FTC pursuant to Part XII.

G.  All materials that were relied upon in making any representations contained in the materials identified in Subparagraph E above, including all documents evidencing or referring to the accuracy of any claim therein or to the efficacy of any covered product, including, but not limited to, all tests, reports, studies, demonstrations, or other evidence that confirm, contradict, qualify, or call into question the accuracy of such claim or the efficacy of such covered product.

## XIV.

### DISTRIBUTION OF ORDER BY DEFENDANT(S)

IT IS FURTHER ORDERED that, for a period of five (5) years from the date of entry of this Order, defendants shall deliver copies of the Order as directed below:

A.  Corporate Defendant: SHN shall deliver a copy of this Order to all of its principals, officers, directors, and managers. SHN also shall deliver copies of this Order to all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within (5) days of service of this Order upon defendant. For new personnel, delivery shall occur prior to their assuming their responsibilities.

B.   Individual Defendant Sunny Sia as Control Person: For any business that Sia controls, directly or indirectly, or in which Sia has a majority ownership interest, Sia shall deliver a copy of this Order to all principals, officers, directors, and managers of that business. Sia shall also deliver copies of this Order to all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within (5) days of service of this Order upon defendant. For new personnel, delivery shall occur prior to their assuming their responsibilities.

C.   Sia as employee or non-control person: For any business where Sia is not a controlling person of a business but is otherwise directly or indirectly engaged in the business of advertising, marketing, or selling foods, drugs, or dietary supplements, Sia shall deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.   SHN and Sia shall secure a signed and dated statement acknowledging receipt of the Order, within thirty days of delivery, from all persons receiving a copy of the Order pursuant to this Part.

## XV.

### RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

_____
JANET M. EVANS
MARY L. JOHNSON

TRIAL COUNSEL
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W., Rm. NJ-3212
Washington, D.C. 20580
Tel.: (202) 326-2125 (Evans);
      (202) 326-3115 (Johnson)
Fax: (202) 326-3259
Attorneys for Plaintiff

_____
SUNNY HEALTH NUTRITION TECHNOLOGY
& PRODUCTS, INC.
by: Sunny Sia, President

_____
SUNNY SIA, individually and as an officer or director
of Sunny Health Nutrition Technology & Products, Inc.

_____
ALAN PALMER
Kaye Scholer LLP
901 Fifteenth Street, NW, Suite 1100
Washington, DC 20005
Tel.: (202) 682-3536
Fax.: (202) 424-0409
Attorney for Defendants

**SO ORDERED:**

DATED: November 30, 2006

_____
UNITED STATES DISTRICT JUDGE